## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WASEEM KHAN, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> XCERRA CORPORATION, ROGER W. BLETHEN, DAVID G. TACELLI, MARK S. AIN, ROGER J. MAGGS, JORGE TITINGER, and BRUCE R. WRIGHT, <br><br> Defendants. | Case No.   1:18-cv-11592 <br><br> <u>CLASS ACTION</u> <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Waseem Khan ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Xcerra Corporation ("Xcerra" or the "Company") against Xcerra and the members of Xcerra's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9 and to enjoin the vote on a proposed transaction, pursuant to which Xcerra will be acquired by Cohu, Inc. ("Cohu") through its wholly owned subsidiary Xavier Acquisition Corporation ("Merger Sub") (the "Proposed Transaction").

2.      On May 8, 2018, Xcerra and Cohu issued a joint press release announcing their entry into an Agreement and Plan of Merger (the "Merger Agreement") to sell Xcerra to Cohu. Under the terms of the Merger Agreement, Xcerra stockholders will receive: (i) $9.00 in cash; and (ii) 0.2109 of a share of Cohu common stock for each share of Xcerra common stock they own (the "Merger Consideration").  Based on the closing price of Cohu common stock as of May 7, 2018, the Proposed Transaction values Xcerra at $13.92 per share, with a total enterprise value of approximately $627 million.

3.      Immediately following the closing of the Proposed Transaction, Cohu stockholders will own approximately 72% of the combined company and Xcerra's then former stockholders will own approximately 28% of the combined company.

4.      On June 21, 2018, Cohu filed a Form S-4 Registration Statement (as amended on July 26, 2018, the "Registration Statement") with the SEC containing a joint proxy statement/prospectus.  The Registration Statement, which recommends that Xcerra stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Xcerra's and Cohu's financial projections, relied upon by Xcerra's financial advisor Cowen and Company, LLC ("Cowen"); (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Cowen; and (iii) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Xcerra stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

5.      In short, unless remedied, Xcerra's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material

information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction scheduled for August 30, 2018, unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, most of the documents are electronically stored, and the evidence exists.  Xcerra is incorporated and headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Xcerra.

10.     Defendant Xcerra is a Massachusetts corporation with its principal executive offices located at 825 University Avenue, Norwood, Massachusetts 02062.  Xcerra is comprised of four businesses involved in the semiconductor and electronics manufacturing test markets.  Xcerra trades on the NASDAQ Global Market under the ticker symbol "XCRA."

11.     Defendant Roger W. Blethen ("Blethen") was a founder of the Company and has been Chairman of the Board since December 2008 and a director of the Company since 1980. Defendant Blethen previously served as Chairman of the Board from December 2001 until August 2008, Chief Executive Officer ("CEO") of the Company from September 1996 until November 2005, President of the Company from 1994 to 1996 and Senior Vice President of the Company from 1985 until 1994.

12.     Defendant David G. Tacelli ("Tacelli") has been CEO and a director of the Company since November 2005, and President of the Company since May 2002.  Defendant Tacelli previously served as Chief Operating Officer of the Company from May 2002 to November 2005 and as Executive Vice President of the Company from December 1999 to May 2002.

13.     Defendant Mark S. Ain ("Ain") has been a director of the Company since 2001 and Lead Independent Director of the Company since June 2010.

14.     Defendant Roger J. Maggs ("Maggs") has been a director of the Company since 1994.

15.     Defendant Jorge L. Titinger ("Titinger") has been a director of the Company since August 2012.

16.     Defendant Bruce R. Wright ("Wright") has been a director of the Company since August 2008.

17.     Defendants Blethen, Tacelli, Ain, Maggs, Titinger and Wright are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.     Cohu is a Delaware corporation with its principal executive offices located at 12367 Crosthwaite Circle, Poway, California 92064.  Cohu is a leading supplier of semiconductor test and inspection handlers, micro-electro mechanical system test modules, test contactors and thermal

sub-systems used by global semiconductor manufacturers and test subcontractors. Cohu trades on the NASDAQ Global Select Market under the ticker symbol "COHU."

19.     Merger Sub is a Delaware corporation and wholly owned subsidiary of Cohu.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Xcerra common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

22.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of May 3, 2018, there were 54,914,530 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Xcerra or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

23.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

24.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

26.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background

27.     Xcerra was incorporated in 1976 as LTX Corporation.  In connection with its merger with Credence Systems Corporation in August 2008, the Company changed its name to LTX-Credence Corporation.  Following the acquisition of its Multitest and Everett Charles Technologies ("ECT") businesses, it changed its name to Xcerra Corporation.  Xcerra is a global provider of test and handling capital equipment, interface products, test fixtures and related services to the semiconductor and electronics manufacturing industries.  The Company operates in the semiconductor and electronics manufacturing test markets through its atg-Luther & Maelzer, ECT, LTX-Credence ("LTXC") and Multitest businesses.  Semiconductor designers and manufacturers worldwide use Xcerra's test and handling equipment and interface products to test their devices during the manufacturing process.  These devices are incorporated into a variety of products including, personal computers, mobile internet equipment, broadband access products

and personal communication and entertainment products such as mobile phones and tablets, among others.

28.    On April 10, 2017, Xcerra announced that it had entered into an agreement pursuant to which it would be acquired by Sino IC Capital Co. Ltd. ("Sino IC Capital") and Unic Capital Management Co., Ltd. ("Unic Capital") for $10.25 per share in cash (the "Unic Merger").  The Company's stockholders voted to approve the Unic Merger on October 12, 2017.  At a February 6, 2018 Board meeting, following difficulty in securing CFIUS approval of the Unic Merger, the Board approved the termination of the Unic Merger.

29.    The Company has experienced financial success in recent quarters.  On February 22, 2018, the Company announced the financial results for its second fiscal quarter ended January 31, 2018.  For the quarter, net sales were $110,276,000 compared to net sales of $120,286,000 in the prior fiscal quarter.  Non-GAAP net income for the quarter was $10,565,000, or $0.19 per diluted share.  Commenting on Xcerra's strong financial results, defendant Tacelli stated:

> We reported record second quarter sales and profit for what is usually our seasonally slow fiscal quarter. Our sales were up nearly 40% and non-GAAP net income up approximately 200% compared to fiscal Q2FY17. Early indications for calendar 2018 are that the favorable business cycle will continue, driven by the automotive, industrial and mobility markets. In addition to the strong business environment, we gained share in all of our major product areas in calendar year 2017, and look to extend those gains in 2018. During the fiscal year, we made an investment in a Malaysian-based handler company which will expand our addressable market. We expect to launch a new product from this investment in the second half of the calendar year.

30.    For the fiscal quarter ending April 30, 2018, the Company expected net sales to be in the range of $110 million to $115 million and non-GAAP net income per share in the range of $0.19 to $0.23 per share.

31.     In fact, the Company exceeded its guidance for the third fiscal quarter.  In the May 23, 2018 press release announcing the quarter's financial results, Xcerra reported net sales of $115,717,000 and non-GAAP net income per share of $0.24.

32.     Underscoring the Company's prospects for future growth, on April 17, 2018, Needham & Company set a price target for Xcerra of $16.00 per share, ***over $2.00 more*** than the implied value of the Merger Consideration.

**The Sale Process**

33.     In October 2017, a company referred to in the Registration Statement as "Company A" contacted defendant Tacelli to inquire as to Xcerra's interest in selling its LTXC tester business to Company A.  Communications with Company A ceased during the pendency of the Unic Merger.

34.     On March 1, 2018, Cohu submitted a proposal letter to defendant Tacelli to acquire the Company for $11.75 per share, consisting of $8.57 in cash and $3.18 in Cohu common stock.

35.     Also on March 1, 2018, Xcerra entered into a confidentiality agreement with Company A.  Company A subsequently indicated it was only interested in an acquisition of Xcerra's LTXC tester business and terminated its pursuit of a strategic transaction with the Company.

36.     On March 28, 2018, Cohu submitted an offer to acquire Xcerra for $13.75 per share, consisting of $9.00 in cash and $4.75 in Cohu common stock.

37.     Throughout April 2018, Cohu, Xcerra and their advisors conducted due diligence and negotiated the terms of the Merger Agreement.

38.     On May 7, 2018, Cowen rendered its fairness opinion and the Board approved the Merger Agreement.  Cohu and Xcerra then executed the Merger Agreement.

**The Proposed Transaction**

39.     On May 8, 2018, Xcerra and Cohu issued a joint press release announcing the

Proposed Transaction, which states, in relevant part:

> POWAY, Calif., & NORWOOD, Mass. -- Cohu, Inc. (NASDAQ:COHU) and
> Xcerra Corporation (NASDAQ:XCRA) today announced they have entered into a
> definitive merger agreement pursuant to which Cohu will acquire Xcerra for a
> combination of cash and stock. The acquisition is expected to make Cohu a global
> leader in semiconductor test, with combined sales for Cohu and Xcerra in excess of
> $800 million for the last twelve months.
>
> Upon the closing of the transaction, Xcerra shareholders will be entitled to receive
> $9.00 in cash and 0.2109 of a share of Cohu common stock, subject to the terms of
> the definitive agreement. Based on the closing price of Cohu common stock as of
> May 7, 2018, the transaction values Xcerra at $13.92 per share, or approximately
> $796 million in equity value, with a total enterprise value of approximately
> $627 million, after excluding Xcerra's cash and marketable securities net of the
> debt on its balance sheet as of January 31, 2018. The transaction value represents a
> premium of 8.4% to Xcerra's closing price on May 7, 2018, and a premium of
> 15.4% to Xcerra's 30-day average closing price.
>
> "This proposed acquisition is a powerful combination of two complementary
> companies that will accelerate our strategy to diversify our product offerings and
> strengthen Cohu's position as a global leader in back-end semiconductor
> equipment. The depth and breadth of the combined product portfolios, engineering
> and product development resources, as well as the global customer support
> platforms will enable us to deliver comprehensive semiconductor back-end
> solutions that better meet the future needs of our customers," commented Luis
> Müller, Cohu's President and CEO.
>
> Mr. Müller continued, "The acquisition of Xcerra increases our addressable market
> to approximately $5 billion across handlers, contactors, test and inspection, further
> strengthening our ability to fully capitalize on the secular growth opportunities in
> the automotive, IoT, industrial and mobility markets. We are excited to welcome
> the Xcerra team to Cohu and look forward to an efficient completion of the
> transaction, with a focus on delivering long-term value to our customers, employees
> and shareholders."

> * * *

> **Transaction Details**
>
> Cohu intends to fund the cash payable to Xcerra shareholders with a combination
> of cash on hand from the combined companies' balance sheets and approximately
> $350 million in debt financing. The transaction is expected to close in the second

half of calendar year 2018, subject to approval by both companies' respective shareholders, antitrust regulatory approvals and other customary closing conditions.

Xcerra shareholders are expected to own approximately 30% of the combined company upon the closing of the transaction. The transaction has been unanimously approved by the Boards of Directors of both companies.

### Management and Board of Directors

Luis Müller will remain president and chief executive officer and lead the combined company, and Jeff Jones will continue to serve as vice president of finance and chief financial officer. Two members of Xcerra's board of directors will join Cohu's board upon the closing of the transaction.

### Insiders' Interests in the Proposed Transaction

40.     Xcerra and Cohu insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Xcerra.

41.     Notably, two members of the Board have secured positions for themselves as directors of the combined company upon consummation of the Proposed Transaction.

42.     Additionally, Xcerra's directors and executive officers stand to reap substantial financial benefits for securing the deal with Cohu.  Pursuant to the Merger Agreement, all vested Xcerra restricted stock units will be converted into the right to receive cash payments.  The following table sets forth the value of the restricted stock units the Company's named executive officers stand to receive:

| Name | RSUs Held (#) | Value of RSUs ($) |
|---|---|---|
| David G. Tacelli | 540,000 | 7,595,542 |
| Mark J. Gallenberger | 337,500 | 4,747,196 |
| Pascal Rondé (6) | 152,750 | 2,148,530 |

43.     Moreover, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

**Golden Parachute Compensation**

| Name | Cash ($) [1] | Equity ($) [2] | Perquisites/ Benefits ($) [3] | Tax Reimbursement ($) [4] | Other($) [5] | Total |
|------|---------|-----------|---------------|-----------------|----------|-------|
| David G. Tacelli | 2,765,453 | 7,595,542 | 72,662 | — | 30,000 | 10,463,657 |
| Mark J. Gallenberger | 1,889,726 | 4,747,196 | 72,022 | — | 30,000 | 6,738,944 |
| Pascal Rondé [6] | 631,240 | 2,148,530 | — | — | — | 2,779,770 |

## The Registration Statement Contains Material Misstatements or Omissions

44.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Xcerra's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

45.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Xcerra and Cohu's financial projections, including the financial projections relied upon by Xcerra's financial advisor, Cowen; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Cowen; and (iii) Company insiders' potential conflicts of interest.  Accordingly, Xcerra stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

### Material Omissions Concerning Xcerra and Cohu's Financial Projections

46.     The Registration Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

47.     First, the Registration Statement sets forth:

In connection with the Merger and the other transactions contemplated by the Merger Agreement, Xcerra's management updated and expanded certain financial forecasts regarding Xcerra (for the purposes of this section, the "Xcerra Forecasts" means each of the Xcerra FY 2018 — FY 2019 Forecast and the Xcerra FY 2018 — FY 2023 Forecast, each as described below). In developing the Xcerra Forecasts, Xcerra's management made assumptions with respect to industry performance, general business, economic, regulatory, litigation, geopolitical, market and financial conditions, as well as Xcerra specific factors such as supply and demand trends, the status of, and estimated revenues from, new products and services, effective tax rate and utilization of net operating losses, all of which are difficult to predict, and many of which are beyond Xcerra's control. **The Xcerra Forecasts were updated on a different basis, for a different purpose and at a different time than Xcerra's public guidance as to Xcerra's future financial performance and on a different basis, for a different purpose and at a different time than other internal financial forecasts that Xcerra's management may prepare for its own use or for the use of the Xcerra Board in evaluating Xcerra's business. The Xcerra Forecasts were therefore updated solely in connection with the evaluation of the Merger and do not, and were not intended to, update or revise Xcerra's public guidance as to its future financial performance.**

Registration Statement at 126.  (Emphasis added).  The Registration Statement fails, however, to disclose how Xcerra's forecasts were updated and how the forecasts differed from Xcerra's public guidance as to Xcerra's future financial performance.  The Registration Statement further fails to disclose the "other internal financial forecasts that Xcerra's management prepared for its own use or for the use of the Xcerra Board in evaluating Xcerra's business."  The Registration Statement must state unequivocally if the Xcerra forecasts represent the true best estimates of the Company's future performance or whether Xcerra's public guidance as to Xcerra's future financial performance and other internal financial forecasts that Xcerra's management prepared for its own use or for the use of the Xcerra Board in evaluating Xcerra's business represented the true best estimates of the Company.  Xcerra stockholders must be provided with this information to determine whether the forecasts created in connection with the evaluation of the Proposed Transaction were artificially depressed to make the Merger Consideration appear more favorable to Xcerra stockholders.

48.     The Registration Statement also fails to provide Xcerra's unlevered free cash flow projections for the three-month period ending on July 31, 2018 and the full fiscal years ending in 2019 through 2022.  Xcerra's unlevered free cash flows were utilized by Cowen in its valuation analyses, including its discounted cash flow analysis ("DCF") of Xcerra, and are material to the Company's stockholders.  Indeed, investors are concerned, perhaps above all else, with the unlevered free cash flows of the companies in which they invest.  Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation.  Accordingly, without the unlevered free cash flow projections, the Company's stockholders will not be able to adequately assess whether the Merger Consideration is fair compensation given the expected unlevered free cash flows of Xcerra.

49.     Additionally, the Registration Statement fails to provide "Xcerra's estimated United States federal and 18 state net operating loss carry forwards, as estimated and provided by the management of Xcerra," (Registration Statement at 121) utilized by Cowen in its DCF of Xcerra.

50.     Further, the Registration Statement sets forth:

Cowen estimated a range of values for the shares of Cohu Common Stock based upon the discounted present value of Cohu's projected unlevered free cash flow for the eight-month period ending on December 31, 2018 and the full fiscal years ending in 2019 through 2022 and the terminal value of Cohu based on multiples of Cohu's forecasted Adjusted EBITDA for Cohu's fiscal year ending in 2023. . . .

Registration Statement at 123.  Yet, the Registration Statement fails to disclose Cohu's forecasted Adjusted EBITDA for the fiscal year ending in 2023.

51.     Moreover, the Registration Statement states:

On May 7, 2018 . . . [r]epresentatives of Cowen reviewed with the Xcerra Board its financial analysis of the Merger Consideration. . . . The participants at the meeting then discussed the value of the proposed consideration to Xcerra's stockholders, including the premium represented by the Merger Consideration as of May 7, 2018,

payable to Xcerra's stockholders, expected accretion to Xcerra's stockholders and the expected synergies to be realized following the closing of the potential transaction.

Registration Statement at 93.  However, the Registration Statement fails to disclose any analyses demonstrating the accretion to Xcerra's stockholders expected to result from the Proposed Transaction.

52.     The omission of this information renders the statements in the "Unaudited Prospective Financial Information" and "Opinion of Xcerra's Financial Advisor, Cowen" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Cowen's Financial Analyses***

53.     The Registration Statement describes Cowen's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Cowen's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Xcerra's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Cowen's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to Xcerra's common stockholders.

54.     With respect to Cowen's *DCF* of Xcerra, the Registration Statement fails to disclose: (i) Xcerra's projected unlevered free cash flow for the three-month period ending on July 31, 2018 and the full fiscal years ending in 2019 through 2022; (ii) the inputs and assumptions underlying the calculation of the discount rate range of 12.0% to 14.0%; (iii) Xcerra's estimated net operating loss carry forwards; and (iv) the inputs and assumptions underlying the selection of

the 13.1% discount rate applied to Xcerra's estimated net operating loss carry forwards.  *See* Registration Statement at 121.  These inputs and assumptions to Cowen's DCF take on critical importance for Xcerra stockholders to assess whether Cowen performed its analysis in an appropriate manner or to shoehorn the Merger Consideration into a range of fairness.  Notably, Cohu's financial advisor Deutsche Bank Securities Inc. ("Deutsche Bank") performed a DCF of Xcerra on a standalone basis resulting in a valuation range almost wholly above the Merger Consideration and notably higher than Cowen's value indications, $13.64 to $17.07, without taking into account the synergies estimated by Cohu management to result from the merger, as compared to the implied value per share range of $12.81 to $15.82 resulting from Cowen's DCF.  Additionally, Deutsche Bank performed a DCF of Xcerra taking into account the synergies estimated by Cohu management to result from the merger.  This DCF resulted in a range of implied estimated equity value of $15.90 to $20.55, wholly above the Merger Consideration.  The Registration Statement must also disclose if the Board was ever presented with a similar DCF analysis from Cowen taking into account the synergies estimated to result from the Proposed Transaction.  This information is crucial in order to determine whether the Merger Consideration Xcerra's stockholders are receiving is fair or whether their fiduciaries sold the Company at a lowball price that did not take into account the Company's true value and value to Cohu through a merger.

55.    With respect to Cowen's *DCF* of Cohu, the Registration Statement fails to disclose: (i) Cohu's forecasted Adjusted EBITDA for Cohu's fiscal year ending in 2023; and (ii) the inputs and assumptions underlying the calculation of the discount rate range of 9.5% to 11.5% utilized in the analysis.  *See* Registration Statement at 123.

56.     Similarly, with respect to Cowen's *Analysis of Xcerra Selected Transactions*, the Registration Statement fails to disclose the individual multiples Cowen observed for each transaction analyzed.  The omission of these multiples renders the summary of the analysis and the implied value per share ranges materially misleading. A fair summary of the *Analysis of Xcerra Selected Transactions* requires the disclosure of the individual multiples for each transaction; merely providing the low, mean, median, and high multiples that Cowen observed is insufficient, as stockholders are unable to assess whether the banker utilized the appropriate transactions and applied appropriate multiples, or, instead, selected certain transactions that yielded unreasonably low multiples in order to drive down the implied value per share ranges.   Furthermore, the individual multiples have a heightened importance here because of several of the transactions were excluded because they were not available.  Indeed, ***half*** of the transactions that Cowen selected were excluded when calculating the NTM Revenue, NTM Adjusted EBITDA, and NTM Non-GAAP EPS multiples, and ***more than half*** (eight out of the twelve) were excluded when calculating the LTM Non-GAAP EPS multiples. *See* Registration Statement at 119-120.

57.     With respect to Cowen's *Analysis of Xcerra Selected Publicly Traded Companies* and *Analysis of Cohu Selected Publicly Traded Companies*, the Registration Statement fails to disclose the individual multiples Cowen observed for each company analyzed. *See* Registration Statement at 117-118, 121-123. The omission of these multiples renders the summary of the analysis and the implied value per share ranges materially misleading and incomplete. A fair summary of the *Analysis of Xcerra Selected Publicly Traded Companies* and *Analysis of Cohu Selected Publicly Traded Companies* requires the disclosure of the individual multiples for each company; merely providing the low, mean, median, and high multiples that Cowen observed is insufficient, as stockholders are unable to assess whether the banker utilized the appropriate

companies and applied appropriate multiples, or, instead, selected certain companies that yielded unreasonably low multiples in order to drive down the implied value per share ranges.

58.     The omission of this information renders the statements in the "Opinion of Xcerra's Financial Advisor, Cowen" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

59.     Finally, the Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Xcerra insiders.

60.     The Registration Statement states that, "[t]he New Cohu Board is expected to include two directors from the current Xcerra Board." Registration Statement at 133. However, the Registration Statement entirely omits any information concerning the identity of the two individuals that will be appointed to the board of directors of the combined company. Indeed, the Registration Statement explicitly states:

> To date, no member of Xcerra's management and no member of the Xcerra Board has engaged in any discussions with Cohu or any of its affiliates regarding the substantive terms, including compensation, of such person's continued employment with or service to Xcerra (***other than with respect to the two members of the Cohu Board to be designated by Xcerra as described in "— Board of Directors and Management after the Transaction"***) following the consummation of the Merger and each such person has agreed not to engage in any such discussions until after the Xcerra Special Meeting and Cohu Special Meeting have concluded.

Registration Statement at 94-95 (emphasis added). The Registration statement further fails to disclose whether Cohu's prior proposals or indications of interest mentioned management retention in the combined company. Such information is material to Xcerra stockholders so that they may understand the conflicts of interest facing management and the Board. The timing and nature of post-close employment provides key insight concerning motivations that would prevent

fiduciaries from acting solely in the best interests of the Company's stockholders.  If the Board negotiated for their own interests ahead of the interests of Xcerra stockholders, stockholders would certainly find such information material.

61.     The omission of this information renders the statements in the "Background of the Merger" and "Board of Directors and Management after the Transaction" sections of the Registration Statement materially incomplete and misleading.

62.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

63.     Plaintiff repeats all previous allegations as if set forth in full.

64.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

65.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It

misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company, the financial analyses performed by the Company's financial advisors, and potential conflicts of interest faced by Company insiders.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

66.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek appraisal.

67.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

68.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

69.     Plaintiff repeats all previous allegations as if set forth in full.

70.     The Individual Defendants acted as controlling persons of Xcerra within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Xcerra, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

71.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

73.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

74.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Xcerra' stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Xcerra, and against defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Xcerra stockholders;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 30, 2018

/s/ Mitchell J. Matorin
Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
Wellesley, Massachusetts 02482
(781) 453-0100
mmatorin@matorinlaw.com

**WEISSLAW LLP**
Richard A. Acocelli

Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*